**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

| | |
|---|---|
| **SHAKA BROWN** | **CIVIL ACTION NO. 5:25-cv-1797** |
| **VERSUS** | **JUDGE ALEXANDER C. VAN HOOK** |
| **NASHVILLE QUALITY, LLC D/B/A BURGER KING** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned is a Motion to Dismiss [doc. #8] pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Nashville Quality, LLC ("Nashville Quality") d/b/a Burger King. The motion is opposed. [doc. #11].

For the reasons assigned below, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. **IT IS ORDERED** that Plaintiff Shaka Brown's alternative request for leave to amend is **DENIED.**

## BACKGROUND

On November 17, 2025, Plaintiff Shaka Brown ("Brown") filed a Complaint against Nashville Quality, asserting claims of harassment and discrimination based on gender and retaliation, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 and 2000e-3. [doc. #1, pp. 1, 4].

Brown was formerly employed by Nashville Quality as a shift manager at the Burger King located on Pines Road ("the Pines Road Location")in Shreveport, Louisiana. *Id.* at p. 2. On or about May 2022, her co-worker, Burney Davis ("Davis"), called Brown and told her she needed to report to the Pines Road Location to assist him in locating a part for the equipment he needed to repair. *Id.* Brown alleges that, when she arrived at the Pine Road Location's storage

room to assist Davis, Davis attacked her and forced himself upon her, groping private parts of her body. *Id.* Brown immediately left and later filed a complaint with her employer. *Id.* Brown further alleges that, after the events of May 11, 2022, she was notified that Burger King staff and managers were "all too aware" of Davis's tendency toward indecent behavior and knew that he had a decades-long criminal history of related offenses. *Id.*

Brown filed a police report against Davis on or about May 22, 2022, and, upon information and belief, Nashville Quality fired Davis on or about May 24, 2022. *Id.* at pp. 2–3. Brown continued to work for Burger King, but alleges that she suffered severe mental anguish; anxiety; depression; and emotional distress because of the conduct with Davis. *Id.* at p. 3.

Davis eventually pled guilty to a state sexual battery offense. *Id.* "Shortly thereafter," Brown "heard rumors that a third-party vendor hired Davis as a maintenance employee to fix the different types of equipment Burger King utilizes." *Id.* On or about July 2, 2022, Nashville Quality allowed Davis onto the Pine Roads location to fix broken equipment while Brown was present and working. *Id.*

Brown argues that Nashville Quality's actions constructively terminated her employment as her working conditions became so intolerable that no reasonable person could be expected to work in such an environment. *Id.* Brown also asserts that she continues to suffer severe mental anguish, anxiety, depression, emotional distress, physical health issues, economic losses, and lost wages. *Id.* at 4. Brown claims that Nashville Quality's conduct constitutes purposeful discrimination and harassment and retaliation for opposition to discrimination. *Id.* She further alleges that Nashville Quality is liable for the actions of its managers and other employees. *Id.*

On March 2, 2026, Nashville Quality filed the instant motion. [doc. #8, p. 1]. In its motion, Nashville Quality argues that Brown has failed to allege a cause of action for sexual

harassment because Davis's behavior was not severe and pervasive. *Id.* at p. 4. Nashville Quality further contends that Brown has not alleged any facts to suggest that she experienced sex discrimination. *Id.* at p. 5. Third, Nashville Quality maintains that their prompt remedial action after the alleged sexual harassment incident absolves the company of liability. *Id.* Moreover, Nashville Quality argues that Brown has not presented any evidence that could establish constructive termination or retaliation. *Id.* at p. 7. Finally, Nashville Quality states that this Court should not defer ruling on the instant motion because no additional facts would rescue Brown's Complaint from a motion to dismiss. *Id.* at p. 8.

Brown filed an opposition to Nashville Quality's motion on March 30, 2026. [doc. #12, p. 1]. In her response, Brown asserts that Nashville Quality has applied the incorrect standard to her sexual harassment claim. *Id.* at p. 6. Rather than the conjunctive requirement that the alleged conduct be "severe and pervasive," Brown argues that such conduct must be "severe or pervasive." *Id.* As such, Brown contends the single alleged incident of sexual harassment suffices to establish a plausible claim. *Id.* at p. 7. Brown further responds that Nashville Quality's purported remedial action does not preclude liability. *Id.* at p. 8. Moreover, Brown argues that she established a retaliation claim because Nashville Quality permitted Davis to return to Brown's workplace after Brown's Complaint, her police report, and Davis's firing. *Id.* at p. 9. In the alternative, Brown seeks a chance to amend her suit, should this Court grant Nashville Quality's Motion. *Id.* at p. 10.

On April 13, 2026, Nashville Quality field a reply. [doc. #14]. Nashville Quality argues that even under the disjunctive standard, Brown fails to meet her burden, and its motion to dismiss should be granted.

Accordingly, this matter is now ripe.

\

## LAW AND ANALYSIS

### A. Legal Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief, inter alia, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate to possibility or probability; it lies somewhere in between. *See Iqbal*, 556 U.S. at 678. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556. Although this Court must accept as true all factual allegations set forth in the Complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (citation omitted).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

(citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 338 (1989).

With regard to employment discrimination plaintiffs, the Supreme Court has instructed that she "need not plead a prima facie case of discrimination" to survive a Rule 12(b)(6) motion. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The Supreme Court explained that the *McDonnell Douglas* framework[1] "is an evidentiary standard, not a pleading requirement." *Id.* at 510.[2] Accordingly, a plaintiff's complaint need only comply with Rule 8, which requires no more than "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8; *Swierkiewicz*, 423 U.S. at 515.

On the other hand, the prima facie standard *is* relevant at the motion to dismiss stage at least in the sense that a plaintiff is obliged to plead facts as to each of the ultimate *elements* of her claim sufficient to render the case plausible. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). As the Supreme Court has clarified, "*McDonnell Douglas* can provide no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, ___ U.S. ___, 140 S.Ct. 1009, 1019 (2020).

In other words, it may be helpful to reference the *McDonnell Douglas* framework on which plaintiff must rely if she bases her claim on circumstantial evidence. *Id*. Nonetheless,

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[2] Furthermore, *Twombly* did not overrule *Swierkiewicz. See Twombly*, 550 U.S. at 569-70.

*McDonnell Douglas* is not dispositive at the pleading stage because it may not even apply if discovery reveals direct evidence of discrimination. *Scott v. United States Bank Nat'l Ass'n*, 16 F.4th 1204, 1212 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

**B. Sexual Harassment Claim**

Nashville Quality asserts that Brown has failed to establish a plausible sexual harassment claim on three bases: Davis's alleged conduct was not sufficiently severe or pervasive to constitute sexual harassment; Nashville Quality took prompt remedial action; and Brown was not constructively discharged. [doc. #8].

**1. Severe or Pervasive Conduct**

Under Title VII, employers are prohibited from discriminating against individuals "because of such individual's . . . sex." 42 U.S.C. § 2000e-2 (2026). Although the statute does not expressly condemn sexual harassment, the United States Supreme Court long ago held that "sexual harassment . . . is a form of sex discrimination prohibited by Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (citation and internal quotation marks omitted). The *Meritor* Court found that, "for sexual harassment to be actionable, it must be sufficiently severe **or** pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor*, 477 U.S. at 67 (citation omitted) (emphasis added).

A plaintiff can establish sexual harassment under Title VII "by proving, inter alia, that the harassment created a hostile or abusive working environment." *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). Brown "must demonstrate that: (1) she is a member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a 'term, condition, or privilege' of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Harvill*, 433 F.3d at 434 (citation omitted).

This Court finds that the correct standard requires us to consider whether Davis's alleged sexual harassment of Brown was so severe or pervasive as to support a plausible claim of hostile work environment. In its original motion, Nashville Quality asserts that Brown has failed to allege that the conduct was severe **and** pervasive. [doc. #8, p. 3]. When Brown pointed out the proper disjunctive stand, Nashville Quality replied that Brown's claim fails to meet the disjunctive requirements. [doc. #14, p. 1].

First, the United States Court of Appeals for the Fifth Circuit has held that a plaintiff need not allege a defendant's conduct was both severe and pervasive. As highlighted by Brown in her reply to the instant Motion, the Court explicitly rejected a disjunctive standard for Title VII claims in *Harvill*:

> Contrary to being an irrelevant distinction . . . the requirement that a plaintiff establish that reported abusive conduct be both severe *and* pervasive in order to be actionable imposes a more stringent burden on the plaintiff than required by law . . . . The Supreme Court has stated that isolated incidents, if egregious, can alter the terms and conditions of employment . . . . By contrast, under a conjunctive standard, infrequent conduct, even if egregious, would not be actionable because it would not be "pervasive."

*Harvill*, 33 F.3d at 435.

In addition to rejecting the conjunctive "severe and pervasive" requirement, the Fifth Circuit has expressly affirmed a disjunctive standard. *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) ("[T]he test—whether the harassment is severe or pervasive—is stated in the disjunctive."). And just as isolated incidents may be sufficiently severe, frequent harassment incidents, "though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions or privileges of employment such that a hostile work environment exists." *Id.*

Fifth Circuit jurisprudence evinces a clear intent merely to require plaintiffs to establish that the alleged sexual harassment is severe or persuasive. Brown, therefore, need only plausibly establish either one of these elements to survive the instant Motion.

Here, the conduct alleged in Brown's Complaint, if accepted as true, leads to the reasonable inference that Nashville Quality is liable for sexual harassment based on the actions of Davis, its employee. Namely, Brown has plausibly alleged that Davis's conduct was severe.

The applicable standard provides that the "alleged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill*, 433 F.3d at 434 (internal quotation marks and citations omitted). This Court must examine Brown's claim under a "totality of the circumstances test," which considers the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* (citation and internal quotation marks omitted).

According to Nashville Quality, Brown has failed to allege pervasive conduct because she recounted only one incident wherein Davis "forcibly grop[ed] private parts of her body." [doc. #1, p. 2]; [doc. #14, p. 3]. Moreover, Nashville Quality asserts that the alleged conduct is not severe. [doc. #14, p. 3]. The undersigned disagrees and finds that Brown alleged sufficient facts to show that she was subjected to severe conduct, particularly at this stage of the litigation. While Nashville Quality cites several cases in its reply, those cases are distinguishable. [doc. #14, pp. 4-5].

In *Hockman v. Westward Communications, LLC*, the Fifth Circuit considered on appeal whether the district court properly granted summary judgment to plaintiff's former employer. In

that case, the plaintiff alleged that a co-worker slapped her behind with a newspaper, attempted to kiss her, and brushed up against her breasts and behind. 407 F.3d 317, 322 (5th Cir. 2004). Although the plaintiff described multiple occasions in which the defendant engaged in inappropriate conduct, the *Hockman* Court found that such conduct was neither severe nor persuasive. *Id.*at 328. Importantly, the "grabbings or brushings against [the plaintiff's] breasts or behind, by her own account, were . . . not severe." *Id.* (internal quotation marks omitted).

However, Brown recounts that "Davis attacked [her] and forced himself upon her, forcibly groping private parts of her body." [doc. #1, p. 2]. Based on Brown's allegations, which must be accepted as true, Davis's conduct is more severe than the conduct as issue in *Hockman*: Davis did not merely grab or brush against Brown. *Id.*; *Hockman*, 407 F.3d at 322. Rather, he "forcibly groped" her "private parts." [doc. #1, p. 2].

In *Shepherd v. Comptroller of Public Accounts of State of Texas*, another older summary judgment case, the Fifth Circuit held that the plaintiff "had not raised a genuine issue" on her sexual harassment claim based on inappropriate comments and arm touching. 168 F.3d 871, 875 (5th Cir. 1999). The *Shepherd* plaintiff stated that her co-worker issued multiple inappropriate remarks, such as "your elbows are the same color as your nipples," and "you have big thighs." *Id.* at 872. Additionally, the plaintiff alleged that, on multiple occasions, her co-worker looked down her clothing, suggested that she sit on his lap, and touched her arm, rubbing one of his hands down her shoulder to her wrist while standing beside her. *Id.* The Court held that the co-worker's comments were "boorish" and "offensive" but not severe. *Id.* at 874. Instead, the comments were "a mere utterance of an epithet that engender offensive feelings." *Id.* In contrast, Davis's alleged conduct unquestionably included inappropriate physical behavior, not merely offensive comments. [doc. #1, p. 2]. It is true that the alleged conduct in *Shepherd* also

included physical contact, the Court, in this 1999 case, also found that "[n]one of [the co-worker's] actions physically threatened" the plaintiff, that the alleged conduct would not "interfere unreasonably with a reasonable person's work performance[,]" and that the co-worker's "actions did not undermine [the plaintiff's] workplace competence." 168 F.3d at 874. Brown alleges the opposition here.

Instead, the undersigned finds that Brown's experiences are more analogous to cases in which a defendant's behavior satisfied the "severe or pervasive" standard. In *Harvill*, the Court held that a co-worker's conduct was sufficiently severe where "grabbed [the plaintiff] and kissed her on the cheek; popped rubber bands at her breasts; touched her breasts and buttocks; and made comments about the plaintiff's sex life." 433 F.3d at 435-36. Although the plaintiff alleged that her co-worker's inappropriate behavior spanned several months, the Court emphasized the physical contact. *See id.* at 436. Importantly, the Fifth Circuit found that, "[u]ndoubtedly, the deliberate and unwanted touching of [the plaintiff's] **intimate body parts** can constitute severe sexual harassment." *Id.* (emphasis added). The defining similarity between the defendant's conduct in *Harvill* and Davis's actions in the instant case is that both involved unwanted touching of the plaintiff's private parts. *Id.*; [doc. #1, p. 2]. *Harvill* makes clear that touching of the sort experienced by Brown, if true, is sufficiently severe to establish sexual harassment under Title VII. *Id.*[3]; *see also La Day v. Catalyst Technology, Inc.,* 303 F.3d 474, 483 (5th Cir. 2002) (Although the Fifth Circuit acknowledged that the conduct's frequency "indisputably [cut] in favor" of the employer, it determined that a single incident of anal touching was "severe."). Thus, Brown clears the plausibility threshold.

---

[3] The Court cited *Worth v. Tyler*, which held that "direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment." 276 F.3d 249 (7th Cir. 2001) (citations omitted).

Although Brown alleged an isolated incident of inappropriate behavior, Davis's conduct is sufficiently severe to survive this Rule 12(b)(6) challenge. He allegedly attacked her and forcibly groped her private parts. [doc. #1, p. 2]. This is exactly the type of conduct contemplated by prior courts in permitting plaintiffs to proceed with their Title VII sexual harassment claims.

**2. Prompt Remedial Action**

Nashville Quality next argues that, even if Brown alleged sufficient facts to support a sexual harassment (or sex discrimination) claim, it is absolved from liability because it took prompt remedial action. A company may avoid liability under Title VII if it takes "prompt remedial action to protect the claimant" after discovering sexual harassment allegations. *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 329 (5th Cir. 2009). Prompt remedial action "must be reasonably calculated to end the harassment." *Id.* at 329. An "employer who takes the allegations seriously; conducts prompt and thorough investigations; and immediately implements remedial measures based on the results investigation satisfies this prong." *Brenyah v. Columbia Hospital Corporation of Bay Area*, 181 F.4th 609, 629 (5th Cir. 2026). An employer may have also taken prompt remedial action if they implement disciplinary measures. *Carmon v. Lubzrizol Corp.*, 17 F.3d 791, 793 (5th Cir. 1994). A determination that an employer responded appropriately to discriminatory conduct "will necessarily depend on the particular facts of the case, such as the remedial steps taken and the severity of the harassment." *Harvill*, 433 F.3d at 437.

Courts have found prompt remedial action when an employer investigated the incident within one week of discovery and fired the alleged harasser within one month. *Waymire v. Harris County, Tex.*, 86 F.3d 424, 428 (5th Cir. 1996). Certainly, then, Davis's termination less

than two weeks after the events of May 11, 2022 was prompt. [doc. #1, p. 2]. But the inquiry does not end there. The swift pace at which an employer responds to allegations of sexual harassment does not automatically mean that their actions are adequately remedial under the circumstances.

This Court must look at the particular facts of this case. Brown concedes that Nashville Quality had a "Zero Tolerance" policy on sexual harassment. However, Brown alleges that, prior to Davis's attack on her, Nashville Quality managers were "all too aware" of his tendency toward indecent behavior and knew that he had a decades-long criminal history of related offenses. Yet, despite this knowledge, Nashville Quality took no action to prevent the alleged attack of Brown. Further, less than two months after firing Davis and shortly after Davis pled guilty to sexual battery on Brown, Nashville Quality allowed Davis back onto the Pine Roads property while Brown was present, to effectively perform the same duties he had before, albeit through employment with a third party. Under these particular circumstances, even assuming Brown had a duty to make a prima facie showing, she has sufficiently alleged facts to negate the remedial nature of Nashville Quality's actions against Davis.

**3. Constructive Discharge**

Nashville Quality also moves for dismissal of Brown's harassment claim on the basis that she was not constructively discharged.

To succeed on a constructive discharge theory, Brown must show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Landgraf v. USI Film Products*, 968 F.2d 427, 429–30 (5th Cir. 1992), *aff'd*, 511 U.S. 544 (1994) (citations omitted). The plaintiff must "show that

[she] actually resigned . . . An employee cannot bring a constructive-discharge claim until [she] is constructively *discharged*." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citation omitted).

In paragraph 22 of her Complaint, Brown plainly alleges that Nashville Quality's actions "effectively terminated her employment." [doc. #1, p. 3]. Moreover, for the reasons discussed above, Brown sufficiently alleged facts showing, at this juncture, that the conditions "became so intolerable that no reasonable person could be expected to work in such an environment." *Id.*

Thus, having addressed all three bases for dismissal of Brown's sexual harassment claim, IT IS RECOMMENDED that Nashville Quality's Motion to Dismiss be DENIED as to this claim.

**C. <u>Sex Discrimination</u>**

In the instant Motion, Nashville Quality argues that the conduct used to support Brown's sexual harassment allegation "cannot form the basis for her sex discrimination claim." [doc. #8, p. 5]. As an initial matter, this Court finds that sexual harassment and sexual discrimination are not separate claims under Title VII. Rather, sexual harassment is a form of sex discrimination. As noted above, Title VII does not explicitly reference sexual harassment, but the Supreme Court explained that sex discrimination encompasses sexual harassment. *Meritor*, 477 U.S. at 65 ("sexual harassment . . . is a form of sex discrimination prohibited by Title VII."). In a Title VII sexual harassment claim, the plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* . . . because of . . . sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998).

Additionally, a plaintiff need not allege explicit sex-based comments or specific facts suggesting that a defendant would not have engaged in inappropriate behavior had the plaintiff

not been of a certain sex; conduct motivated by sexual desire raises the logical inference that the alleged harasser has discriminated based on sex. The Supreme Court clarified:

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex.

*Id.* at 80.

In *Oncale* and *La Day*, the Courts recognized that additional evidence might be necessary to adequately allege a sexual harassment claim in same-sex cases. *See id.*; *see also La Day*, 302 F.3d at 478. The conclusion that Davis's behavior constituted discrimination on the basis of sex requires no additional evidence if the facts in the Complaint are accepted as true: he attacked and forcibly groped Brown. [doc. #1, p. 2]. As such, Davis's alleged conduct was certainly motivated by sexual desire and perpetrated because of Brown's sex. Moreover, Brown's Complaint explicitly states that she is a female. *Id.* at p. 1. While not expressly stating that Davis is a male, Brown continuously refers to Davis as "he" in her Complaint. *Id.* at pp. 2–3. And importantly, Davis pled guilty to sexual battery. *Id.* at p. 3.

This Court finds that, if it accepts Brown's allegations as true, she has recounted sufficient facts for a sex discrimination claim. Judicial interpretation of Title VII's provisions demonstrate that sexual harassment, by itself, constitutes sex discrimination. Moreover, the behavior complained of and admitted to, which includes non-consensual groping by a man inflicted upon a woman, is squarely within the definition of sex discrimination as illustrated by the courts.

However, it is also clear from Brown's opposition to the Motion to Dismiss that she asserts a claim of sexual harassment as a form of sex discrimination, and she does not appear to otherwise assert a separate claim of sex discrimination. Therefore, for these reasons, IT IS

RECOMMENDED that Nashville Quality's Motion to Dismiss be GRANTED IN PART and DENIED IN PART as to Brown's sex discrimination claim. To the extent that she asserts a sexual harassment claim as a form of sex discrimination, IT IS RECOMMENDED that the motion be DENIED. To the extent that Nashville Quality moves for dismissal of any freestanding sex discrimination, IT IS RECOMMENDED that the motion be GRANTED, as Brown does not appear to assert any such claim.

**D. <u>Retaliation</u>**

Finally, Nashville Quality moves for dismissal of Brown's claim of retaliation.

A plaintiff establishes a prima facie case of retaliation under 42 U.S.C. § 2000e–3(a) by showing that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

An employee has engaged in a protected activity when she "either (1) opposed any practice made an unlawful employment practice by Title VII or (2) if she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Id.* (citation and internal quotation marks omitted). For purposes of the second element of the prima facie case, the challenged action must be "materially adverse," i.e., that it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (citation and internal quotation marks omitted). Finally, "[c]lose timing between an employee's protected activity and an adverse action against

h[er] may provide the causal connection required to make out a prima facie case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 552 (5th Cir. 2007) (footnote omitted).

When Brown reported Davis's behavior to her supervisor, she engaged in a protected activity. [doc. #1, p. 2]; *Long v. Eastfield College*, 88 F.3d 300, 505–06 (5th Cir. 1996) (finding that an employee's internal complaints were protected activity under Title VII). Further, she has asserted that she suffered an adverse employment action because she was ultimately constructively discharged. However, Brown's heavier burden rests on whether she has plausibly alleged a causal connection between her complaints and the alleged retaliatory action.

Nashville Quality reasons that Brown fails to meet this threshold, and this Court agrees. [doc. #8, p. 7]. Brown acknowledges that Nashville Quality initially fired Davis in response to her sexual harassment complaint. Further, Brown does not allege any facts to suggest that Davis's return to Burger King was related to her complaint. Brown explains that she "heard rumors that a third-party vendor hired Davis as a maintenance employee," and "Defendant allowed Davis on the Defendant's property . . . even while Plaintiff was present and working." [doc. #1, p. 3]. As Nashville Quality points out, Brown "does not allege that Nashville Quality knew Davis was being dispatched to her restaurant to fix the broken equipment." [doc. #8, p. 7]. Nor does she allege that Nashville Quality knew or directed a third party to hire Davis.

While the undersigned has recommended denial of the Motion to Dismiss as to Brown's sexual harassment claim, the applicable standard for a retaliation claim is different. The facts outlined in Brown's Complaint fail to satisfy the "heightened-but for causation" required for a retaliation claim. *See Garcia v. Professional Contract Services, Inc.*, 938 F.3d 236, 243. Therefore, IT IS RECOMMENDED that Nashville Quality's Motion to Dismiss be GRANTED as to Brown's retaliation claim.

### E. Amendment

Brown alternatively moved the Court for an opportunity to amend her Complaint if it were found lacking. She has not previously amended her Complaint, and certainly a court is required to freely grant leave to amend when justice so requires it. FED. R. CIV. P. 15(a)(2). At this juncture, however, it does not appear there are currently additional facts that would support amendment to survive a Rule 12(b)(6) challenge. Moreover, a court may deny leave when the plaintiff neither provides a copy of the proposed amended complaint, nor explains how the proposed pleading would cure the deficiencies in the initial complaint. *Scott*, 16 F.4th at 1209.

Regardless, as this Report and Recommendation recommends disposal of fewer than all claims, if adopted, the Court's judgment will not be final and will remain subject to revision at any time before conclusion of the case. FED. R. CIV. P. 54(b). Consequently, if plaintiff uncovers facts sufficient to support a dismissed claim, then she may seek reconsideration of the court's dismissal of those claims, together with a proposed amended complaint.

For these reasons, Brown's alternative request for leave to amend is DENIED at this time, without prejudice to her right to move for reconsideration under Rule 54(b).

## CONCLUSION

For the above assigned reasons, **IT IS RECOMMENDED** that Nashville Quality's Motion to Dismiss [doc. #8] Brown's sexual harassment and discrimination claims be **GRANTED IN PART AND DENIED IN PART**. **IT IS RECOMMENDED** the motion be **GRANTED** to the extent that Brown appears to assert a sex discrimination claim separate and apart from her sexual harassment claim, but **DENIED** to the extent that she asserts a sexual harassment claim as a form of sex discrimination.

**IT IS FURTHER RECOMMENDED** that Nashville Quality's Motion to Dismiss [doc. #8] Brown's retaliation claim be **GRANTED**

**IT IS FURTHER ORDERED** that Brown's alternative request for leave to amend is **DENIED**, without prejudice to her right to move for reconsideration under Rule 54(b).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under FED. R. CIV. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. U.S.A.A.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

In Chambers, at Monroe, Louisiana, on this 24th day of September, 2026.

Kayla Dye McClusky

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE